IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID E. PEROTTI et. al, | : | No. 4:08-cv-2137 |
| Appellants, | : | |
| v. | : | Judge John E. Jones III |
| EDWARD R. PEROTTI, | : | |
| Appellee. | : | |

## MEMORANDUM

**August 6, 2009**

Currently pending before this Court is an appeal from a judgment of Bankruptcy Court of the Middle District of Pennsylvania, lodged by Appellants David E. Perotti ("David") and Justine Perotti ("Justine") (collectively, "Appellants" or "Debtors") (Rec. Doc. 1) (the "Appeal"). For the reasons that follow, the Appeal will be denied.

## STANDARD OF REVIEW:

Jurisdiction over the instant bankruptcy appeal is premised upon 28 U.S.C. § 158(a)(1). "[F]indings of fact made by the bankruptcy court may be reversed only for clear error." In re Nelson Co., 959 F.2d 1260, 1263 (3d Cir. 1992) (citations omitted). However, legal questions and conclusions are subject to

1

plenary, *de novo* review. Id.; In re O'Brien Envtl. Energy Inc., 188 F.3d 116, 122 (3d Cir. 1999).

## FACTUAL BACKGROUND/PROCEDURAL HISTORY:[1]

Appellee Edward R. Perotti ("Appellee" or "Edward") and his late wife Christine Perotti (collectively, the "Peroittis") purchased a property at 5 Woodruff Avenue in Selinsgrove, Pennsylvania (the "Property") in 1975. Christine Perotti lived on the Property until her death in 2003. Appellee remained on the property after his wife's death. During her lifetime, it was Christine Perotti's intent that her son, David, would one day acquire the Property.

Between 1996 and 2003, the Perottis executed various loans secured by mortgages against the Property.[2] The Perottis retained some of the proceeds from these loans for their personal use and transferred the remaining proceeds to the

---

[1] We are cognizant that "the findings of fact made by the bankruptcy court may be reversed only for clear error." In re Nelson Co., 959 F.2d 1260, 1263 (3d Cir. 1992). After reviewing the record, we are satisfied that Bankruptcy Judge Mary D. France committed no clear factual errors. Accordingly, the factual recitation contained herein is taken from the Bankruptcy Judge's thorough and concise synopsis, found in Perotti v. Perotti, 2008 WL 5158543 (Bankr. M.D. Pa. 2008).

[2] In March 2001, the Appellants filed for Chapter 13 bankruptcy protection and in doing so failed to list the Perottis as creditors in their schedules and statements. The case was converted to Chapter 7 in August 2002 and Appellants received a discharge in December 2002. However, the Appellants neglected to otherwise inform the Perottis of their bankruptcy and even went as far as to ask David's sister, Brenda Foreman, to refrain from revealing the bankruptcy to Appellee. The Perottis nescience in this regard led to them essentially extending loans to the Appellants through 2003. In fact, in March 2003, the Perottis refinanced a loan and remitted to Appellants $3,896.17 of the proceeds, which Appellants agreed to repay.

2

Appellants with the understanding that the Appellants would pay a monthly pro-rata share of the loan payments. This arrangement was designed to allow the Appellants to take advantage of the Perottis' favorable credit rating and the lower interest rate associated therewith. As of April 2003, the Appellants owed Appellee approximately $410 per month[3] for their share of the mortgage payments, which they dutifully paid for more than three years.

In May 2006, Appellee transferred the Property by way of deed to David in consideration of "One ($1.00) Dollar and love and affection." After the conveyance of the Property, Appellee continued to live thereon.[4] In September and October 2006, Appellants and Appellee made a final modification to their loan arrangement. Appellee agreed to pay down his share of the mortgage in its entirety, which amounted to $41,825, but would allow the mortgage to remain in his name so that the favorable interest rate could be preserved. In exchange,

---

[3] In total at this time, Appellants admitted to owing the Perottis $49,540.

[4] As the Bankruptcy Judge noted, appellants do not dispute that it was understood between all parties at the time of conveyance that Appellee would continue to live on the Property after the deed had been transferred. However, against the advice of legal counsel, Appellee failed to reserve for himself a life estate in the Property when he conveyed it to his son.
Nonetheless, in accord with the original understanding of the parties, Appellee remained on the Property after transfer of the deed and continued to enjoy the benefits and perform all the responsibilities associated therewith. In this vein, he continued to pay taxes and insurance on the Property and otherwise maintained the Property in good repair. Appellee was not required to pay rent for his use of the Property. Further, when David informed the insurer of the Property, Erie Insurance Exchange ("Erie"), that ownership had changed, Erie issued an amended declaration describing Appellee as a "lifetime tenant." David made no efforts to alter this designation.

3

Appellants agreed to continue to make the monthly payments on their share of the mortgage until the obligation was satisfied in full.

Accordingly, Appellee proceeded to cash in various retirement accounts in order to pay down his share of the mortgage. After being notified that his father had the funds to pay his portion of the mortgage, David offered to retrieve them from his father. David informed his father that he would deposit the money into Appellants' bank account and then Appellants would issue a check to pay down Appellee's share of the mortgage. Appellee agreed, assuming that Appellants would do as they represented. Unfortunately, Appellants deposited Appellee's mortgage pay off into their bank account but failed to use it to pay down Appellee's share of the mortgage. Instead, the money was used to satisfy other loans the Appellants owed to third parties. Appellee had no knowledge of the misuse of his funds at this time.

In January 2007, Appellants sent a letter to Edward demanding that he bar certain individuals from entering the Property.[5] The letter threatened to "terminate the arrangement" under which Edward resided on the Property if he failed to

---

[5] The letter specifically mentioned Edward's friend, Barbara Arnold, by name. Based on testimony elicited before the Bankruptcy Court, it appears that David's desire to prevent Ms. Arnold from entering the Property was based upon Ms. Arnold's relationship with his father.

comply with the terms therein.⁶ Edward refused, and Appellants refused to pay the aforementioned $410 monthly mortgage payment. To avoid foreclosure and protect his interest in the Property, Appellee was thus forced to assume Appellants' share of the monthly mortgage payment. Appellants again filed for bankruptcy on June 21, 2007, which precipitated the decisions from the Bankruptcy Court that undergird the instant appeal.

In an August 27, 2008 opinion, Bankruptcy Judge France held that Edward intended that David would obtain legal title to the Property subject to Edward's life estate. Accordingly, she imposed a resulting trust, stating that the Chapter 7 trustee, Attorney Lawrence G. Frank, could sell David's remainder interest in the property but could not disturb Edward's life estate.⁷ Further, Bankruptcy Judge France held that Edward had a claim of $45,721.17 against the Debtors as a result of the March 2003 loan and the share of Edward's mortgage entrusted to Debtors in October 2006.⁸ On October 22, 2008, the Bankruptcy Judge entertained

---

⁶ David maintained that he held the present possessory interest in the Property since the deed did not reserve a life estate in the Property for his father. Consequently, David threatened to "evict" his father.

⁷ Since this determination manifested her belief that the parties demonstrated an intent to impose the trust with the transfer of the deed, she initially believed that she need not pass on the issue of imposing a constructive trust on the Property.

⁸ Bankruptcy Judge France held that all debts incurred prior to March 2001 were discharged in the Debtor's prior bankruptcy proceeding.

Edward's motion requesting her to make additional findings regarding the imposition of a constructive trust. Bankruptcy Judge France subsequently granted this motion, imposed the constructive trust, and instructed the Chapter 7 trustee to convey the Property to Edward.[9] On November 24, 2008, the Debtors initiated the instant appeal, challenging the Bankruptcy Judge's decisions to grant Edward a life estate in the Property and to impose a constructive trust on same. We will address these contentions *seriatim*

**DISCUSSION:**

**A.  The Imposition of a Resulting Trust upon the Property and the Subsequent Vesting of a Life Estate in Appellee**

"A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of." Chambersburg Trust Co. v. Eichelberger, 588 A.2d 549, 551 (Pa. Super. 1991). "One who seeks to impress a resulting trust

---

[9] This decision was based on two grounds: (i) Debtors' failure to notify Edward of their 2001 bankruptcy; and (ii) Debtors' failure to pay their share of the mortgage and Edward's subsequent assumption of this obligation, a circumstance that increased the equity in the Property and resulted in a benefit to Debtors.

upon real property bears a heavy burden of proof; evidence must be clear, direct, precise, unequivocal and convincing." Essner v.D'Andrea, 1986 WL 501556 (Phl. Ct. Com. Pl. 1986); see also Fenderson v. Fenderson, 685 A.2d 600, 605 (Pa. Super. 1996). Thus, as articulated by Bankruptcy Judge France, the question is whether Appellee conveyed the Property to David so clearly, explicitly, and unequivocally as to indicate that he did not intend to transfer the beneficial interest in the Property to David.

Appellants argue that the intent to transfer the beneficial interest was clear. First, they assert, and it is uncontradicted, that the Perottis always intended on transferring the Property to David. Further, they note that in spite of the fact that Edward consulted a lawyer who advised him to explicitly reserve a life estate in the property, Edward conveyed the deed without such a reservation. Accordingly, Appellants reason that this failure manifests Edward's intent to abandon the beneficial interest in the Property upon conveyance to David. Second, Appellants note that there is a presumption that a gift arises when the transfer of property is to a "wife, child, or other natural object of the bounty of the person who contributed to the purchase price." Fenderson, 685 A.2d at 606. However, this presumption can be rebutted by clear and convincing evidence that the payor, at the time of the transfer, did not intend to convey beneficial interest in the property to the

transferee. Mermon v. Mermon, 390 A.2d 796, 798-99 (Pa. Super. 1978).

After considering the facts recounted above, the Bankruptcy Judge concluded that there was clear and convincing evidence that Appellee intended to reserve for himself a life estate in the Property at the time of its transfer.[10] We review this determination for clear error.

Appellants argue that Edward's failure to include in the deed a reservation of a life estate in the Property manifests his intent to convey the beneficial interest in the property to David.[11] While this type of inference may advance Appellants' argument as applied to this specific set of facts, the same type of reasoning can be utilized to advance Appellee's position when applied to a different set of facts. For example, Appellee could argue that David's failure to correct the insurance policy's reference to him as a "life tenant" manifests David's recognition that

---

[10] This evidence included: (i) David acquiesced in Edward's continually residing on the Property subsequent to the transfer; (ii) David understood at the time of transfer that Edward would continue to live on the Property; (iii) Edward was not required to pay rent for his use of the Property; (iv) Edward continued to pay the taxes and insurance on the Property and otherwise maintained it in good repair; and (v) David acquiesced to the reference to Edward in the insurance policy as a "life tenant."

[11] During a hearing conducted by the Bankruptcy Court, Appellee testified he declined to follow his attorney's advice with regard to the reservation of the life estate because he trusted that his son would not interfere with his living arrangements.

8

Appellee possess a life tenancy.[12] Accordingly, based on these facts alone, we cannot say that there is clear and convincing evidence to support either position. However, when we expand our universe of knowledge to include the circumstances surrounding Appellee's residency on the Property, we are clearly pointed towards a particular determination.

It is uncontroverted that the Perottis intended to convey the Property to David at some future point and that at the time of the conveyance both Edward and David were under the impression that Edward would reside on the Property after its conveyance. Edward did in fact remain on the Property subsequent to its conveyance and he did so with David's acquiescence. Edward paid no rent, so his residence on the Property was not part of a landlord/tenant relationship. However, he was more than guest of David's, as he was responsible for paying taxes and making ordinary repairs to the Property. Indeed, by all appearances, these expenditures rendered Appellee a life tenant. See In re Felker, 211 B.R. 165, 168-69 (Bank. M.D. Pa. 1997) (life tenants are responsible for paying taxes and making ordinary repairs). As the Bankruptcy Judge determined, these facts give credence to Appellee's position that he intended to retain the beneficial interest in

---

[12] David appears to offer no reason as to why he failed to correct this reference, if it in fact was a misrepresentation of Edward's interest in the Property.

the Property subsequent to its conveyance, and explains why David made no effort to change the designation of Appellee as a "life tenant" in the insurance policy. The only question for us is whether the Bankruptcy Judge committed "clear error" in reaching this conclusion.

In applying the "clear error standard," a reviewing court will not reverse a lower court's finding of fact simply because it would have decided the case differently. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985). Rather, the reviewing court must ask whether, considering the totality of the circumstances, "it is left with the definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001) (citing U.S. v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). Given the circumstances of the Appellee's residency on the Property after transfer thereof, and in light of the Appellants' manifest untrustworthiness, which casts doubts upon their credibility in the instant matter, we lack a "definite and firm conviction" that Bankruptcy Judge France committed error in concluding that Appellee did not intend to abandon the beneficial interest in the Property when he conveyed same to his son David.[13] Accordingly, we

---

[13] This determination defeats Appellants "gift argument." See Mermon v. Mermon, 390 A.2d at 798-99 (presumption that transfer of property between father and son is a gift can be rebutted by clear and convincing evidence that the payor, at the time of the transfer, did not intend to convey beneficial interest in the property to the transferee).

10

believe that the Bankruptcy Judge was precisely correct in awarding Appellee a life estate in the Property and imposing a resulting trust on same.[14] Therefore, the Appeal is denied to this extent.

### B. The Imposition of a Constructive Trust upon the Property

"A constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground he would be unjustly enriched if he were permitted to retain it." Nagle v. Nagle, 799 A.2d 812, 819 (Pa. Super. 2002). Generally, however, an equitable duty to convey property to another arises only in the presence of fraud, duress, undue influence, mistake, or abuse of a confidential relationship. Yohe v. Yohe, 353 A.2d, 417, 420 (Pa. 1976) (citations omitted).[15] The party seeking the imposition of a constructive must show by "clear, direct, precise and convincing" evidence that it is warranted. In re I.D. Craig Serv. Corp., 125 B.R. 453, 456 (Bankr. W.D. Pa. 1991) (citations omitted).

---

[14] This determination renders David's interest a vested remainder in fee simple absolute. The Chapter 7 trustee could liquidated this remainder for the benefit of David's creditors but cannot disturb the Appellee's life tenancy.

[15] It is also important to note that a constructive trust may be imposed even where the property acquisition was not wrongful, Gee v. Eberle, 420 A.2d 1050, 1056 (1980) (citations omitted), and is not an available when a written contract is present, as injured parties have remedies at law in such instances, see Wingert v. T.W. Phillips Gas & Oil Co., 157 A.2d 92, 96 (1959).

11

Appellants first argument is that David cannot be unjustly enriched because the deeding of the Property to him was a gift. However, we have already determined that this was not the case. His second argument is that he cannot be unjustly enriched because he is currently immersed in a Chapter 7 bankruptcy case, meaning that the Chapter 7 trustee holds legal title to the Property and would liquidate same for the benefit of creditors should we uphold the appeal. (Rec. Doc. 6-2 p. 15) (citing In re Shareholders Funding, Inc., 188 B.R. 150 (Bankr. E.D. Pa. 1995)). However, a reading of In re Shareholders makes clear that the imposition of a constructive trust in the bankruptcy context is governed by state law. In re Shareholders, 188 B.R. at 156.[16] The salient state law provisions regarding constructive trusts have already been identified above.

As Bankruptcy Judge France determined, the transfer of the Property was based upon the assumption that the Appellants would continue to repay the loans Appellee had secured for them.[17] Accordingly, it is entirely reasonable that

---

[16] Contrary to what Appellants argue, the In re Shareholders Court did not decline to impose a constructive trust because constructive trusts are inapplicable in bankruptcy cases; rather, the Court declined to impose the trust because there was not clear and convincing evidence to support it. Appellants have identified no other precedent in our Circuit, nor have we found any, that stands for the proposition that bankruptcy courts cannot impose a constructive trust upon property.

[17] As noted, we are to give deference to such factual conclusions, and we see not reason to doubt the same.

knowledge of the 2001 bankruptcy would have induced Appellee to reconsider the transfer of the Property, as it may have indicated to him that Appellants would be unable to repay the loans, given the financial strife that befell them. Indeed, this bolsters Appellee's testimony before the Bankruptcy Court that he would not have transferred the Property to David if he had known about the Appellants' 2001 bankruptcy.

As the Bankruptcy Judge aptly recognized, by concealing their bankruptcy from Appellee, Appellants deceived and misled him as to their creditworthiness, which ultimately encouraged him to transfer the Property. In light of this, we believe that Appellants perpetrated a fraud upon Appellee. Further, since Appellee would not have transferred the Property to David in the absence of this fraud, the fraud enabled the Appellants to attain benefits that they would not have otherwise realized. This is the very essence of unjust enrichment. Consequently, since the Appellants perpetrated a fraud upon Appellee that enabled them to unjustly enrich themselves at his expense, we believe that the imposition of a constructive trust is the appropriate remedy under the circumstances.[18] Indeed, it would be unconscionable to allow any portion of the Property to remain in

---

[18] This determination obviates the need to assess whether or not a confidential relationship existed between the Appellee and the Appellants. Even if such a relationship was not present, the imposition of a constructive trust would be justified by the aforementioned fraud.

13

Appellants' hands, given their mendacity. Therefore, the Appeal is denied in this regard.[19] An appropriate Order will enter.

---

[19] Since this determination results in the invalidation of David's vested remainder, the Chapter 7 trustee will be ordered to transfer David's interest in the Property to Appellee. Appellee's previously established life estate would then "merge" with David's vested remainder to give Appellee a fee simple interest in the Property.